

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 1 8 2010

CLERK, U.S. DISTRICT COURT
By _____
           Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DAVID WAYNE BLACK,              §
                               §
           Petitioner,         §
                               §
v.                             §        No. 4:09-CV-453-A
                               §
RICK THALER, Director,         §
Texas Department of Criminal   §
Justice, Correctional          §
Institutions Division,         §
                               §
           Respondent.         §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, David Wayne Black, a state prisoner currently incarcerated in Beeville, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I.  Factual and Procedural History

In November 2004 petitioner was charged in a two-count indictment with assaulting Penny Black, his common law wife, with a deadly weapon and violating a protective order with a deadly

weapon in cause number 0945038D in Tarrant County, Texas.   The

indictment also included a repeat offender notice.   (Clerk's R. at

5A)   The state later refiled the case and reindicted petitioner in

cause number 0976642R, charging him with assaulting Penny Black and

Ashley Black, one of his daughters, with a deadly weapon and

violating a protective order with a deadly weapon.   The

reindictment also contained a repeat offender notice.   (Clerk's R.

at 2) On October 3, 2005, petitioner's trial commenced.   The jury

found petitioner guilty of assaulting Penny and Ashley with a

deadly weapon (counts one and four) and violating a protective

order with a deadly weapon (count two).   Petitioner pled true to

the repeat offender notice.   The jury assessed 40-, 30-, and 20-

year sentences, to be served concurrently.   (Clerk's R. at 81)   The

state appellate court summarized the evidence at trial as follows:

>   Appellant fathered six children with his common law
> wife, Penny Black.   The couple and their children lived
> together off and on for many years until, on July 7,
> 2004, . . . Penny obtained a protective order against
> Appellant enjoining him from communicating with her in a
> threatening or harassing manner and going within 200
> yards of certain locations.

>   On the evening of July 17, 2004, ten days after the
> protective order issued, Appellant contacted Penny by
> phone at her home.   Penny testified that Appellant
> convinced her to meet him by promising to provide money
> for their children.   Penny left in her van with three of
> their children to meet Appellant around 9:00 or 9:30 in
> the evening.

Penny and her children met Appellant in a convenience store parking lot. Penny stated that Appellant pulled his vehicle next [to] her vehicle so that the driver's side doors faced each other while the vehicles faced opposite directions. Penny said that Appellant stood outside of her driver's-side window for the duration of their conversation. Penny testified that Appellant became hostile and agitated during their conversation and at one point reached his arms into the car through Penny's driver's-side window, which was one-third of the way down. After talking for about twenty minutes, Penny eventually agreed to allow Appellant to come to her home as a ruse to enable her to get away and use her cell phone to call 911.

At that point, but before Penny drove out of the convenience store parking lot, Appellant returned to his car, sat down, and shut his car door. Then, according to Penny, Appellant reached under his car seat and pulled out a knife "with a very sharp blade and a hook on the end." Penny testified that the blade of the knife appeared to be about five inches long. Penny stated that, while holding the knife with the blade pointing toward the car door so that Penny and Ashley could see it, Appellant threatened: "I'm going to slice ya'll up tonight, tomorrow night, and every other night, until I kill your F'ing A's." Penny testified that when Appellant made this threat, her car window remained one-third of the way down while Appellant's was all the way down. Penny testified that she believed the knife to be a deadly weapon capable of inflicting death or serious bodily injury. Penny further testified that she feared for her life because of Appellant's threat and the knife. After Appellant threatened Penny and Ashley, Penny fled the area in her van and called the police. Penny said that Appellant pursued her and attempted to run her off of the road twice before eventually ending his pursuit. Penny then pulled into a gas station where she met with the police and relayed the events of the evening.

Penny and Appellant's eleven-year-old daughter, Ashley Black, also testified about the evening's events.

3

Ashley testified that Appellant became angry during his conversation with Penny.   Ashley stated that Appellant pulled out a knife with a "blade and hook on it" that "looked sharp" and said that he would "slice [her] and [her] family up tonight and every other night until he kill[ed them]."   Ashley said that Appellant held the knife so that she could see it and that she feared for her and her family's lives because of Appellant's threat to "slice them."

Officer Dunn arrived at the gas station in response to Penny's 911 call. Upon arriving at the scene, Officer Dunn spoke with Ashley Black. Officer Dunn testified that Ashley told him that Appellant had pulled out what she described as a "pocket knife" during his conversation with Penny. Officer Dunn further testified that Ashley told him that Appellant spoke in a "mean and scary" voice while holding the knife. According to Officer Dunn, a pocket knife can be a deadly weapon.

Petitioner's convictions were affirmed on appeal and his petition for discretionary review was refused. *Black v. Texas*, No. 2-05-388-CR, slip copy (Tex. App.–Fort Worth Aug. 31, 2006); *Black v. Texas*, PDR No. 1555-06.   Petitioner also sought state postconviction habeas relief by filing an application for writ of habeas corpus, which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. *Ex parte Black*, Application No. WR-70,956-01, at cover.  This federal petition followed, wherein petitioner claims (1) there was no evidence to support his convictions or the deadly weapon finding, (2) he was not notified of the reindictment until after trial, (3) his convictions were obtained in violation of the protection

4

against double jeopardy, and (4) he was denied effective assistance of trial counsel.  (Petition at 7)

## II.  Rule 5 Statement

Respondent believes petitioner has sufficiently exhausted his state remedies on the claims presented as required by 28 U.S.C. § 2254(b), except as to one or more of his ineffective-assistance claims.  Respondent further believes the petition is neither barred by limitations nor subject to the successive petition bar.  (Resp't Answer at 6)

## III.  Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme

5

Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. *See Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Thus, factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003);

6

*Williams*, 529 U.S. at 399. Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

**(1)   *Sufficiency of the Evidence***

Petitioner claims there was no evidence to support his convictions for aggravated assault because there was no evidence of imminent bodily injury or death. He further claims there was no evidence to support a deadly weapon finding because the alleged knife was never recovered or entered into evidence and there was no evidence the knife was manifestly designed or adapted for the purpose of inflicting serious bodily injury or death. (Pet'r Memorandum at 2-9)

Citing to *Jackson v. Virginia,* 443 U.S. 307, 319 (1979), as the legal sufficiency standard of review, state case law as the factual sufficiency standard of review, and state statutory law in overruling the claims, the Second Court of Appeals addressed the issue as follows:

> In two points, Appellant challenges the legal and factual sufficiency of the evidence. In reviewing the

7

legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt. There are two ways evidence may be factually insufficient: (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt. "This standard acknowledges that evidence of guilt can 'preponderate' in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt." In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.

In his first point, Appellant challenges the legal and factual sufficiency of the evidence supporting his convictions for aggravated assault. A person commits the offense of assault if the person intentionally or knowingly threatens another with imminent bodily injury. Aggravated assault by threat is a "nature of conduct offense" that can be committed only by knowingly or intentionally causing the victim to reasonably apprehend imminent bodily injury because of a communicated threat. A threat can be communicated by actions or conduct as well as words. A person commits the offense of aggravated assault if the person uses or exhibits a deadly weapon during the commission of an assault. Because Appellant challenges the deadly-weapon element of

8

aggravated assault in his second point, we will focus on the other elements of aggravated assault in analyzing his first point.

Penny and Ashley's testimony provides legally and factually sufficient evidence to support a finding that Appellant intentionally and knowingly threatened Penny and Ashley with bodily injury. Both Penny and Ashley testified that Appellant's threat to "slice ya'll up . . . until I kill your F'ing A's" caused them to fear for their lives. Appellant thus knowingly and intentionally caused Penny and Ashley to reasonably apprehend bodily injury. Accordingly, the only element of assault that arguably lacks evidentiary support is "imminent bodily injury."

Imminent means "near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous. A threat of imminent bodily injury requires a present rather than a future threat.

In determining whether a threat refers to future rather than imminent bodily injury, courts have considered the appellant's present ability to carry out the threat and the remoteness of the triggering event. Appellant argues that, because he threatened Penny while both sat in their separate cars, he did not threaten "imminent bodily injury." Although two car doors stood between Appellant and Penny, Appellant nevertheless had the present ability to carry out his threat. From Appellant's threat to "slice ya'll up," a reasonable inference may be drawn that he would do so when he accompanied Penny and Ashley to their house. Appellant thus had the present ability to carry out his threat. Further, Appellant did not condition his threat on some future, remote event. Appellant gave "tonight" as the time frame for the execution of his threat. As Appellant made his threat around 9:00 or 9:30 in the evening, "tonight" was "near at hand" and "impending." Thus, we hold the evidence is legally sufficient to support the jury's finding that Appellant intentionally or knowingly threatened Penny and Ashley with imminent bodily injury.

9

We further hold the evidence, viewed in a neutral light, is factually sufficient to support the jury's finding.

In his second point, Appellant challenges the legal and factual sufficiency of the evidence to support the deadly-weapon element of aggravated assault and the jury's deadly-weapon finding made in conjunction with his conviction for violating the protective order. To hold evidence legally sufficient to sustain a deadly-weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a deadly weapon; (2) the deadly weapon was used or exhibited during the commission of the felony; and (3) other people were put in actual danger. The Texas Penal Code defines a deadly weapon as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Although a knife is not a deadly weapon per se, the court of criminal appeals has held that an object such as a knife can be a deadly weapon if the actor intends to use the object in a way in which it would be capable of causing death or serious bodily injury. Wounds need not be inflicted before a knife can be determined to be a deadly weapon.

When the victim sustains no actual injury, the State must present evidence of other factors to establish that a knife is a deadly weapon. The relevant factors include the following: (1) size, shape, and sharpness of the knife; (2) manner of its use or intended use; (3) testimony of the knife's life-threatening capabilities; (4) the physical proximity between the victim and the knife; and (5) the words spoken by appellant. No one factor is determinative, and the fact finder must examine each case on all of its facts to determine whether the knife is a deadly weapon.

Appellant contends that the physical proximity between the victim and the weapon is a primary consideration in a deadly-weapon determination. In support of his contention, Appellant cites two court of criminal appeals cases in which a lack of physical proximity between the knife and victim affected the

10

knife's capability to be deadly. Appellant, however, overstates the importance of physical proximity to the holdings of these cases. In *Alvarez v. State,* the appellant swung a linoleum knife at a distance of four feet from a police officer. The court considered this distance in its deadly-weapon determination, but did not find it determinative. The court noted that testimony established neither the size nor shape of the linoleum knife nor that the victim feared for his life. These factors, along with the four-foot distance from which appellant exhibited the knife, led to the court's holding that the linoleum knife did not constitute a deadly weapon.

In *Davidson v. State,* appellant held a knife with a three-inch blade at a distance of six feet from his victim. Once again, the court considered this distance in its deadly-weapon determination but did not find it determinative. The court noted the small size of the blade and the testimony of the victim that, although he feared for his life, his fear did not arise because of appellant's exhibition of the three-inch knife, but rather because an assailant had previously robbed a friend in the same location. The court held that under those circumstances the three-inch knife did not constitute a deadly weapon.

In this case, the evidence is legally and factually sufficient to support a finding that Appellant's knife constituted a deadly weapon. Although the State did not present the knife at trial, the testimony established the size, shape, and sharpness of the knife. Both Penny and Ashley testified that the knife had a very sharp blade with a hook on it. Penny described the blade of the knife as being five inches in length. Officer Dunn testified that Ashley described the knife as a pocket knife. Although Officer Dunn's testimony regarding Ashley's description of the knife potentially conflicts with her description at trial, this conflict does not render the evidence insufficient. When faced with conflicting testimony, we presume that the trier of fact resolved any such conflict in favor of the verdict and

defer to that resolution.

Testimony addressed the manner of the knife's intended use. By holding the knife so that Penny and Ashley could see it while threatening to "slice ya'll up . . . until I kill your F'ing A's," Appellant expressed an intent to use the knife to kill his family. Testimony also addressed the physical proximity between the knife and Penny. Although both Appellant and Penny sat in their respective vehicles when Appellant made his threat and exhibited the knife, this lack of physical proximity, in light of the evidence supporting the other factors, does not render the evidence insufficient to support a deadly-weapon finding.

Testimony further addressed the knife's life-threatening capabilities and the words spoken by Appellant. Penny testified that the knife appeared to be a deadly weapon capable of causing bodily injury. Penny also testified as to the threatening words spoken by Appellant while brandishing the knife. We hold that the combination of these factors provides legally sufficient evidence to support the jury's finding that Appellant's knife constituted a deadly weapon. We also hold the evidence, viewed in a neutral light, factually sufficient to support the jury's deadly-weapon finding.

In challenges to state convictions under § 2254, only the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), need be satisfied. Under this standard, a federal court must consider whether, viewing all the evidence, as well as all inferences reasonably drawn from it, in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt. *Id*. The jury

is the final arbiter of the weight of the evidence and of the credibility of witnesses. *United States v. Barksdale-Contreras,* 972 F.2d 111, 114 (5th Cir. 1992).

Deferring to the state court's factual findings and application of state law to those findings, the state court's disposition of the legal sufficiency-of-the-evidence claim appears consistent with *Jackson.* Any inconsistencies or contradictions in the witnesses' testimony was a matter for the jury to resolve. *See Little v. Butler,* 848 F.2d 73, 76 (5th Cir. 1988).

Petitioner also claims for the first time in this petition that he was entitled to a lesser-included-offense instruction. This claim was not raised in the state courts and is unexhausted and procedurally barred under the Texas's abuse-of-the-writ doctrine and/or the contemporaneous objection rule, absent a showing of cause and actual prejudice or a fundamental miscarriage of justice. (Pet'r Memorandum of Law at 9) *See Turner v. Quarterman,* 481 F.3d 292, 301 (5th Cir. 2007); *Neville v. Dretke,* 423 F.3d 474, 478 (5th Cir. 2005); *Ogan v. Cockrell,* 297 F.3d 349, 356 (5th Cir. 2002); *Beazley v. Johnson,* 242 F.3d 370, 375 (5th Cir. 2001).

*(2)   Reindictment*

Petitioner claims the state failed to notify him of the second

indictment until after the guilt/innocence phase of his trial, and, with the "change" of indictments, the trial court lost jurisdiction over his case and he was unable to prepare a defense. (Pet'r Memorandum of Law at 10-15)    As a matter of federal constitutional due process, a criminal defendant is entitled to fair notice of the charges against him to permit adequate preparation of his defense.    *Ables v. Scott*, 73 F.3d 591-604 (5th Cir. 1996) (citing *Cole v. Arkansas*, 333 U.S. 196 (1948)).

The record reflects the reindictment was returned on May 6, 2005, and the original cause was dismissed on October 6, 2005, the last day of the trial court proceedings.    (Clerk's R. at 5R)    At the conclusion of the guilt/innocence phase on October 4, outside the presence of the jury, petitioner complained to the trial court that he did not receive a copy of the reindictment.    In response, counsel informed the trial court-

> Your Honor, I have had a copy of the reindictment in this matter.  There was a previous indictment that was reindicted.  I have discussed the indictment with him on several occasions, he is aware of the charges.  He has informed me that he never actually got a copy of this indictment, and, therefore, he feels like he's somehow prejudiced because he didn't actually have a copy of the indictment.  The only thing I can do with the Court is represent that I have discussed the matter with him.  I have - as far as I can tell, he's been aware of the charges against him.  He's been able to assist me in this, but it was a direct reindictment.  I have no knowledge of whether he actually got a copy of it or not.

14

> The only thing I can do for the Court is tell the Court
> that I have discussed the matter with him.  And he is
> concerned that since he didn't actually get a copy of it
> per se, that he has been somehow biased in his ability to
> prepare a defense.

(4RR at 168-70)

Noting the offenses occurred on the same date and involved the same people who had testified at trial, the trial court apparently accepted counsel's assertions that the defense knew Ashley would be testifying, that she had been listed as a state's witness and an injured party, and that counsel "went over it" with petitioner. (*Id.*)

In the state habeas proceeding, trial counsel again responded to the allegation as follows:

> Mr. Black complains that he was not advised of the
> new indictment prior to trial.  In response to this
> allegation, I spoke with Mr. Black on several occasions
> regarding the initial indictment.  I also explained that
> the State had indicated their intention to reindict Mr.
> Black if a plea agreement could not be worked out.  When
> Mr. Black rejected the State's offer in this case, I
> advised him that the State would be adding the additional
> charges concerning his daughter and violation of a
> protective order regarding his wife.  We discussed the
> daughter's possible testimony and the background for the
> protective order on several occasions prior to trial.  I
> explained that Mr. Black's daughter would probably
> testify against him even if the State did not seek a new
> indictment.  In my opinion, Mr. Black was aware of the
> charges against him and we had adequate time to discuss
> the charges.

(State Habeas R. at 75-76)

15

Based on counsel's response, the state habeas judge, who also presided over the trial, found that counsel explained the circumstances to petitioner and advised him regarding the state's intent to reindict him and that petitioner was aware that he had been reindicted to include his daughter as an additional victim . (State Habeas R. at 108, 111)  Absent any evidentiary basis for his claim, the state court concluded petitioner had failed to prove he did not receive notice of the second indictment and believed he was preparing for trial under the first indictment.  (State Habeas R. at 111)

The state court's adjudication of the claim is not objectively unreasonable nor is it contrary to or involve an unreasonable application of federal law on the issue.  The state habeas court clearly found counsel's statements credible and petitioner's claim incredible.  Such credibility findings are entitled to the presumption of correctness.  *See Valdez v. Cockrell*, 274 f.3d 941, 951 (5th Cir. 2001).  Absent clear and convincing rebuttal evidence, a court cannot consider a habeas petitioner's bald assertions on a critical issue to be of probative evidentiary value.  *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983).

*(3)  Double Jeopardy*

Petitioner claims for the first time in this petition that counts one and two of the second indictment charge the same offense, and, thus, the indictment is multiplicitous, in violation of the protection against double jeopardy.  (Pet'r Memorandum of Law at 16-20) This claim was not raised in the state courts and is unexhausted and procedurally barred under the Texas's abuse-of-the-writ doctrine, absent a showing of cause and actual prejudice or a fundamental miscarriage of justice.  (Pet'r Memorandum of Law at 9) *See Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 2998).

Even if petitioner had exhausted the claim in state court, the claim fails.  Count one alleges that on or about July 17, 2004, petitioner did–

> [I]ntentionally or knowingly threaten imminent bodily injury to Penny Black and the defendant did use or exhibit a deadly weapon during the commission of the assault, to wit:  a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury.

Count two alleges that on or about July 7, 2004, petitioner did–

> [I]ntentionally or knowingly, in violation of an order of the 322nd Judicial District Court of Tarrant County, Texas, issued on the 7th day of July, 2004, in cause number 322-369512-04, under authority of the Texas Family Code, Chapter 85 commit an act of violence, to wit:  by

displaying a knife against Penny Black, a member of the defendant's family or household, that was intended to result in physical harm, bodily injury or assault.

(Clerk's R. at 2)

The double jeopardy clause is meant to protect against both multiple prosecutions and, relevant here, multiple punishments for the same offense. An indictment is multiplicitous if it charges a single offense in multiple counts. *See United States v. Reagan*, 596 F.3d 251, 253 (5th Cir. 2010). Determining whether two offenses are the same offense for purposes of the double jeopardy clause focuses on their statutory elements. *See United States v. Lankford*, 196 F.3d 563, 577-78 (5th Cir. 1999). Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See also United States v. Delgado*, 256 F.3d 264, 272 (5th Cir. 2001) (noting that "double jeopardy concerns are not raised if each crime requires an element of proof not required by the other crimes charged").

For purposes of this analysis, a person commits the offense of aggravated assault with a deadly weapon if he intentionally or

18

knowingly threatens another with imminent bodily injury, including the person's spouse, and the person uses or exhibits a deadly weapon during the commission of the assault. TEX PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2009). A person commits the offense of violation of a protective order if, in violation of an order issued under authority of the Texas Family Code Chapter 85, he knowingly or intentionally commits family violence. *Id.* § 25.07(a)(1). "Family violence" is defined as an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

The aggravated assault statute does not require proof of a family relationship or knowledge and violation of a protective order. Furthermore, it appears the state legislature did not intend for the offenses to be treated as the same offense for purposes of double jeopardy. The two provisions are not contained in the same statutory section; the two offenses are not similarly named; the two offenses do not have common punishment ranges, and

the gravamen of the offenses is not the same.   Furthermore, the Texas legislature expressly approved multiple punishments in the case of violation of a protective order.   Section 25.07(c) reads: "If conduct constituting an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or under both sections."   *Id.* § 25.07(c).   When the legislature authorizes multiple punishments, even if the punishment is for the same conduct, the double jeopardy clause is no bar.   *See Albernaz v. United States*, 450 U.S. 333, 344 (1981).

### *(4)   Ineffective Assistance of Counsel*

Petitioner claims his trial counsel was ineffective by failing (1) to subpoena or secure the attendance of Officer McCoy, the Arlington officer who took Penny Black's statement at the gas station, for impeachment purposes, (2) to file a motion in limine, and (3) to present mitigating evidence during the punishment phase. (Pet'r Memorandum of Law at 21-28)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial.   U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984).   To establish ineffective assistance of counsel a petitioner must show

(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id*. at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id*. at 689.

The state habeas court held a hearing by affidavit on petitioner's ineffective assistance claims. (State Habeas R. at 75-77) Upon receiving counsel's response to the allegations, the court entered findings of fact refuting the claims and, applying the *Strickland* standard, concluded petitioner had failed to demonstrate deficient performance on counsel's part or a reasonable probability that the result of his trial would have been different but for counsel's acts or omissions. (State Habeas R. at 107-114) We defer to the state court's determination unless it appears the decision was contrary to or involved an unreasonable application of

*Strickland* or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

Petitioner claims his trial attorney was ineffective by failing to call Officer McCoy, the officer who took Penny Black's statement at the gas station, to impeach her testimony at trial concerning where he obtained the knife. In response, counsel explained-

> [D]uring cross examination of Ms. Black, it was made quite evident to the jury that Officer McCoy's report was in conflict with the testimony given by Ms. Black. However, calling Officer McCoy to the stand to give testimony on this one issue was far outweighed by the potential harm his testimony may have been in other areas. Therefore, as a trial decision, I determined calling Officer McCoy as a witness would not have been in my client's best interest. (State Habeas R. at 76)

According credibility to counsel's explanation, the state court concluded counsel's decision not to call Officer McCoy was the result of reasonable trial strategy. (State Habeas R. at 112) Such credibility determinations are entitled to a presumption of correctness, absent clear and convincing evidence to the contrary. *See Carter v.* Johnson, 131 F.3d 452, 464 (5th Cir. 1997). Furthermore, counsel's decision not to call certain witnesses

generally cannot be used to substantiate a claim of ineffective assistance of counsel.  The presentation of testimonial evidence is a matter of trial strategy and counsel's decisions in this regard are virtually unchallengeable and generally do not provide a basis for habeas corpus relief on the grounds of ineffective assistance of counsel. *Knowles v.* Mirzayance, 129 S. Ct. 1411, 1420 (2009); *Strickland,* 460 U.S. at 689.

Petitioner claims counsel was ineffective by failing to file a motion in limine or request limiting instructions as to extraneous offense evidence.   (Pet'r "Allegations" at 11)   In response, counsel explained:

> [P]rior to trial, counsel for both sides discussed the extraneous offenses with the Court.   The Judge indicated he would address this issue during the trial. When the offer from the State was introduced, defense counsel objected but was overruled.  Defense counsel was aware that limiting instructions regarding extraneous offense[s] could be added to the jury charge.  However, although it is uncommon, defense counsel determined that the limiting instruction would only cause the jury to concentrate attention on these acts since the Court reads the charge to the jury and the jury is give[n] a copy of the charge to review during their deliberations.  (State Habeas R. at 76)

The state habeas court found, based on counsel's explanation, that counsel and the state discussed the matter with the court prior to trial, that the trial court advised that it would address

23

the matter during trial, that counsel objected to the extraneous offense evidence, and that the court limited the extraneous offense evidence presented.   (State Habeas R. at 109)   The state court concluded counsel's decision to not request a limiting instruction was the result of reasonable trial strategy because he did not want to highlight the evidence for the jury during deliberations. (State Habeas R. at 112)   Petitioner has not demonstrated that counsel performed deficiently by declining to call additional attention to such evidence by seeking limiting instructions or that such limiting instructions would have resulted in a different outcome at trial. *See Kessler v. Dretke* 137 Fed. Appx. 710, 712, 2005 WL 1515483, at *1 (5 th Cir. 2005).   Strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for habeas corpus relief on the grounds of ineffective assistance of counsel. *Knowles*, 129 S. Ct. at 1420; *Strickland*, 460 U.S. at 689.

Finally, petitioner claims counsel was ineffective by failing to present mitigating evidence during the punishment phase of his trial. (Pet'r Memorandum of Law at & Exhibit 3) Petitioner sent a letter to the trial court, which was forwarded to defense counsel, wherein petitioner included the names, addresses and phone numbers

of Pastor Mike Gilchrist, Vernon and Ellen Bonnette, and Victor Harlen as possible character witnesses. Petitioner claims counsel failed to contact and call these individuals on his behalf. In response, counsel explained–

> [I]n reviewing this case, there was no mitigating evidence in this matter. Prior to trial, I questioned Mr. Black regarding any potential witnesses we may call if he were found guilty. I have no record of any character witnesses Mr. Black gave me to contact on his behalf. Specifically, I do not have any documentation concerning his request to call Pastor Mike Gilchrist, Vernon Bonnette, or Victor Harlen as character witnesses. (State Habeas R. at 76-77)

According credibility to counsel's explanation, the state habeas court found petitioner had failed to prove, by providing affidavits as to what the individuals would have testified to, how their testimony would have benefitted the defense, and their willingness to testify at trial, there was mitigation evidence available that counsel should have presented or to show a reasonable probability that the result of the proceeding would have been different had counsel called them to testify. (State Habeas R. at 109-10, 112)

Complaints of uncalled witnesses are not favored in federal habeas corpus review, because presentation of testimonial evidence is a matter of trial strategy and because of their highly

speculative nature.  *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  To prevail on an ineffective assistance claim based on counsel's failure to call witnesses, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that testimony would have been favorable to a particular defense.  Petitioner failed to make such a showing.

Petitioner presents no compelling argument or evidence to overcome the strong presumption that his trial counsel was competent or that but for counsel's alleged acts or omissions, the result of his trial would have been different.  The state court's adjudication of these claims is not objectively unreasonable nor is it contrary to or involve an unreasonable application of *Strickland*.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the

reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED May 18, 2010.

_____

JOHN MCBRYDE
United States District Judge